FILED by_____ **KS**___ D.C.

**Jul 8, 2021**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
# 21-20365-CR-SCOLA/GOODMAN
### Case No. _____

18 U.S.C. § 1347
18 U.S.C. § 982(a)(7)

**UNITED STATES OF AMERICA**

**vs.**

**GRISEL FARINAS,**

**Defendant.**
_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times material to this Indictment:

### The Florida Medicaid Program

1.     The Florida Medicaid Program ("Medicaid") was a partnership between the State of Florida and the federal government that provided health care benefits to certain low-income individuals and families in Florida.   The benefits available under Medicaid were governed by federal and state statutes and regulations.   Medicaid was administered by the Centers for Medicare and Medicaid Services ("CMS") and the State of Florida's Agency for Health Care Administration ("AHCA").   Individuals who received benefits under Medicaid were commonly referred to as Medicaid "recipients."

2.     Medicaid was funded with both federal and state money, and was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3.     Health care providers seeking to bill Medicaid were required to apply for and receive a "provider number."   The provider number allowed a health care provider to submit bills, known as "claims," to Medicaid to obtain reimbursement for the cost of health care benefits, items, and services provided to Medicaid recipients.   Each claim was assigned a unique identifying number known as an internal control number ("ICN") which was used to identify the claim in the system.

4.     Medicaid permitted these providers to submit claim forms electronically.   The health insurance claim forms required the provider to provide certain important information, including: (a) the Medicaid recipient's name and identification number; (b) the identification number of the doctor or other qualified health care provider who ordered or provided the health care benefit, item, or service that was the subject of the claim; (c) the health care benefit, item, or service that was provided or supplied to the recipient; (d) the billing codes for the benefit, item, or service; and (e) the date upon which the benefit, item, or service was provided to or supplied to the recipient.

5.     When a claim was submitted to Medicaid, the provider certified that the contents of the form were true, correct, and complete, and that the form was prepared in compliance with the laws and regulations governing the Medicaid program.   The provider further certified that the services and health care items being billed were medically necessary and were in fact provided as billed.

6.     Medicaid contracted with a private company to pay claims. The company was referred to as the Medicaid fiscal agent. The fiscal agent also performed a variety of other functions for Medicaid including enrollment of providers and management of the recipient eligibility system. On

October 1, 2020, Gainwell Technologies ("Gainwell") became the fiscal agent for the Medicaid program in Florida, formerly known as DXC Technology Services, LLC ("DXC").

7.      Medicaid generally paid a substantial portion of the cost of the health care benefits, items, and services that were medically necessary and ordered by licensed doctors or other licensed, qualified health care providers.   Payments were typically made directly to the health care provider rather than to the Medicaid recipient.

8.      Medicaid reimbursed providers for a type of mental health services called behavior analysis ("BA").   The mental disorders treated with BA services included, among other things, intellectual disabilities and autism spectrum disorder ("ASD") in children.   BA services consisted of highly structured interventions, strategies, and approaches to decrease a recipient's maladaptive behaviors and reinforce and increase appropriate behaviors.   BA services were authorized by Section 409.906 of the Florida Statutes and Rule 59G-4.125 of the Florida Administrative Code.

9.      BA services were rendered to Medicaid recipients by the following types of providers: Lead Analysts, Board Certified Assistant Behavior Analysts, Registered Behavior Technicians ("RBTs"), and Behavior Assistants who worked under the supervision of a Lead Analyst.   The Behavior Analyst Certification Board ("BACB") was the credentialing body for these providers.

10.     Medicaid reimbursed the providers of BA services for performing an initial behavior assessment, performing three (3) behavior reassessments per year, and providing up to a maximum of forty (40) hours of BA services per week to a Medicaid recipient.

**The Defendant and Related Company**

11.     Company 1 was a Florida corporation located in Miami-Dade County purporting to provide BA services to Medicaid recipients.

12.     Defendant, **GRISEL FARINAS**, a resident of Miami-Dade County, was an employee and purported RBT for Company 1.

## COUNTS 1-10
## Health Care Fraud
## (18 U.S.C. § 1347)

1.     The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

2.     From in or around June of 2020, through in or around March of 2021, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**GRISEL FARINAS,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program.

### Purpose of the Scheme and Artifice

3.     It was a purpose of the scheme and artifice for the defendant and her accomplices to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicaid; (b) concealing the submission of false and fraudulent

4

claims to Medicaid; (c) concealing the receipt of fraud proceeds; and (d) diverting fraud proceeds for the personal use and benefit of themselves and others, and to further the fraud.

### The Scheme and Artifice

The manner and means by which the defendant and her accomplices sought to accomplish the purpose of the scheme and artifice included, among others, the following:

4.    **GRISEL FARINAS** fraudulently obtained her RBT certification from the BACB by using a paid accomplice to take the online RBT certification examination for her by means of a two-way computer screen.

5.    After obtaining the fraudulent RBT certification, **GRISEL FARINAS** began working for Company 1 as a purported RBT.

6.    **GRISEL FARINAS** submitted and caused Company 1 to submit claims to Medicaid seeking payment for BA services that **GRISEL FARINAS** was unqualified to provide and that were not actually provided to Medicaid recipients as claimed.

7.    As a result of these false and fraudulent claims, Medicaid made payments to the corporate bank accounts of Company 1 in the approximate sum of $128,263, which Company 1 used to pay **GRISEL FARINAS** for purportedly providing BA services to Medicaid recipients.

8.    **GRISEL FARINAS** and others used the proceeds of the health care fraud for their personal use and benefit, the use and benefit of others, and to further the fraud.

### Acts in Execution or Attempted Execution of the Scheme and Artifice

9.    On or about the dates set forth as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant, **GRISEL FARINAS**, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and

5

willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in that the defendant submitted and caused the submission of false and fraudulent claims to Medicaid seeking the identified dollar amounts, and representing that she provided BA services to the following Medicaid recipients, as further described below:

| Count | Approx. Date of Service | Medicaid Recipient | Claim Number/ ICN | Services Claimed; Approx. Amount Claimed |
|---|---|---|---|---|
| 1 | August 20, 2020 | R.M.1 | 2220241012166 | BA services; $292 |
| 2 | August 20, 2020 | R.M.2 | 2220241012612 | BA services; $195 |
| 3 | September 09, 2020 | R.M.1 | 2220259011424 | BA services; $195 |
| 4 | September 09, 2020 | R.M.2 | 2220259011360 | BA services; $292 |
| 5 | September 10, 2020 | R.M.1 | 2220259011424 | BA services; $292 |
| 6 | September 10, 2020 | R.M.2 | 2220259011360 | BA services; $195 |
| 7 | September 14, 2020 | R.M.1 | 2220267006854 | BA services; $195 |
| 8 | September 14, 2020 | R.M.2 | 2220267006941 | BA services; $292 |
| 9 | September 23, 2020 | R.M.1 | 2220274016062 | BA services; $195 |
| 10 | September 23, 2020 | R.M.2 | 2220274016121 | BA services; $292 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## FORFEITURE
### (18 U.S.C. § 982(a)(7))

1.        The allegations in this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendant, **GRISEL FARINAS**, has an interest.

2.        Upon conviction of a violation of Title 18, United States Code, Section 1347, as alleged in this Indictment, the defendant shall forfeit to the United States, any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses, pursuant to Title 18, United States Code, Section 982(a)(7).

3.        The property subject to forfeiture as a result of the alleged offenses includes but is not limited to:

(i)        a sum of approximately $128,263, which represents the total amount of funds involved in or derived from the violations of Title 18, United States Code, Section 1347 alleged in this Indictment and which may be sought as a forfeiture money judgment.

4.        If any of the property described above, as a result of any act or omission of the defendant:

a.        cannot be located upon the exercise of due diligence;

b.        has been transferred or sold to, or deposited with, a third party;

c.        has been placed beyond the jurisdiction of the court;

d.        has been substantially diminished in value; or

e.        has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to the forfeiture of substitute property under the provisions of

7

Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 982(a)(7) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

FOREPERSON _____

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

MARC T. CANZIO
SPECIAL ASSISTANT U.S. ATTORNEY

8

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

CASE NO._____

v.

Grisel Farinas

## CERTIFICATE OF TRIAL ATTORNEY*

_____ Defendant/

**Superseding Case Information:**

**Court Division:** (Select One)

☑ Miami ☐ Key West ☐ FTL
☐ WPB ☐ FTP

New defendant(s) ☐ Yes ☐ No
Number of new defendants _____
Total number of counts _____

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No) **Yes**
   List language and/or dialect _Spanish_

4. This case will take __4__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   I    0 to 5 days      ☑
   II   6 to 10 days     ☐
   III  11 to 20 days    ☐
   IV   21 to 60 days    ☐
   V    61 days and over ☐

   (Check only one)
   Petty        ☐
   Minor        ☐
   Misdemeanor  ☐
   Felony       ☑

6. Has this case previously been filed in this District Court? (Yes or No) **No**
   If yes: Judge _____ Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter? (Yes or No) **No**
   If yes: Magistrate Case No. _____
   Related miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____
   Is this a potential death penalty case? (Yes or No) **No**

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)? (Yes or No) **No**

8. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) **No**

9. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)? (Yes or No) **No**

MARC T. CANZIO
Special Assistant United States Attorney
FLA Bar No.        106306

*Penalty Sheet(s) attached

REV 3/19/21

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** **GRISEL FARINAS**

**Case No:** _____

Counts #: 1-10

Health Care Fraud

Title 18, United States Code, Section 1347

**\*Max. Penalty:**      Ten (10) Years Imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**